Edw ards, Ch. J.
delivered the opinion of the court. After a statement of the case, he proceeded:
It is evident, from the record, that there were four parties to the submission; and that four distinct claims. *323 one belonging to each party, were submitted; and the arbitrators, In their award, have accordingly awarded upon the respective claims of each party severally. It will, therefore, be necessary to consider so much of the award as relates to the plaintiffs in this writ of error, and their interest only.
We will examine the errors assigned, in their order.
By an act of assembly, passed March 1st 1797 (a), entitled “ An act concerning guardians, infants, masters, and apprentices,” it is provided, that “ When the claim of an infant or infants, to land, shall interfere with the claim or claims of any other person or persons, it shall and may be lawful for the guardian of such infant or infants, to settle the dispute, with the proprietor or proprietors of the interfering claim or claims, by submitting the same to reference, agreeable to the arbitration laws that may be in force,” &c. By an act passed the 19th of December 1795, entitled “An act concerning arbitra-tions” (b), persons desirous of ending any controversy, or suit, by arbitration, were authorised mutually to agree to submit such controversy, or suit, to the decision and determination of any person or persons chosen by the parties contending. And they were further authorised “ To nominate the person or persons so chosen, together with the nature of the dispute to them refered, to any court of record within this commonwealth,” &c.
From these two acts, taken together, it is clear that the guardians of the then infants, John and James Galloway, were authorised to make the submission ; and that the court were authorised to make the order of reference, on the application of the guardians, “purporting to operate on the property (to wit, the land) of the infants.”
If any doubt can exist, it cannot be either as to the power of the guardians to submit, or as to the power of the court to make, on their application, the order of reference, at the December term 1797 ; but it must be as to the power of the court to render judgment on the award, at the February term 1798. This doubt is raised by the act passed the 12th day of February 1798, entitled “ An act concerning awards (c), in the last section of which, it is declared, that “ All former acts concerning awards or arbitrations!, now in force in this common-2 wealth, are hereby repealed.” And the February term *324 of tbe Bourbon court, commenced on the third Monday, of the month, which could not be earlier than the 15th, day of the month. The last recited act cóntains no provision authorising guardians to. make submissions for their wards ; and it has been contended that the repealing clause therein, repealed that clause in the act. concerning guardians,n&c. by which authority had been given tpthem.to.submit,Sfc.; and that, therefore the court could not, at the February term 1798, render j udgment on this award, which was made on the 29th December 1797.
We cannot assent to so much, of the premises, as alleges that, any part of the act “ concerning guardians,” &c. was repealed by the general clause in the act of February 1.798, “ concerning awards.’!
But if the premises were true, the conclusion would by no means follow. The act of 1797, relates to the power of guardians over the estaje- of their wards, and gives them a new power, which before they did not possess ; and it declares, that they may submit to reference, disputes concerning the lands of their wards, “agreeable to the arbitration laws that may be in force.”
From this declaration, the legislature evidently had ip contemplation that changes might take place in the arbitration laws ; and as evidently intended that such changes should not affect the power they had given to, the guardians ; but that those powers should be still exercised by making submissions agreeably to the forms which then were, or that might at any time thereafter be prescribed, by the general arbitration laws.
With this, declared, intention of the legislature of.1797 before them, it. cannot be presumed that the legislature of 1798, if they had a different intention, would content themselves by declaring it by implication only ; or by the general expressions in the repealing clause of the act of 1798, before recited ; especially, when there is no part of the act of 1798, which shews that the legislature had, at that time, in their contemplation, the case of infants, or the power of the guardian over them, or their, estates.
But if we should be mistaken in supposing that the, pet of 1798, does not repeal any part of the act of 1797, still, the conclusion will not follow, that because the act, of 1797, authorising the submission and the award, both of which were made in December 1797, had been.re-. *325 pealed by the act of the 12th of February 1798, no judg-roent could be rendered on the award after the 12th day of February 1798. The act of 1798, is clearly prospective in its provisions, and intended to operate upon submissions thereafter to be made.
The act of 1798, has not declared that it intended to make void, submissions and awards made before its passage, wherever no judgment had been entered upon the award, before the passage of the act. It can only have that operation by construction. The intention of the makers of a statute, should be followed with reason and discretion, in the construction of a statute — Plow. 206. Every statute ought to be construed for the preventing delay as much as possible (a). No statute shall be construed in such manner as to be inconvenient, or against reason — 4 Bac. Ab. 652 (b). All these rules of construction would be violated, if the construction contended for, should be adopted.
The intention of the act of 1798, was to provide more effectually for submissions to arbitrators, in future, than had theretofore been done, and not to defeat those submissions and awards which had been previously made, pursuant to the existing laws : and it would be highly inconvenient, and against reason, that they should be defeated, after the parties had incurred all the expence and trouble of settling their disputes, except the entry of the judgment on the award. It would also tend to produce unreasonable delay in determining controversies be-, tween the parties, if, after having litigated the difference before the tribunal of their own choice, and when nothing remained to be done, but the confirmation of the court, they should be turned round, to litigate the same matter, by an original suit.
If the construction contended for, were correct, it would defeat every submission and award made under the act of 1795 (c), “ concerning arbitrations,” where no. judgment had been rendered thereon, until after the passage of the act of 179.8 ; for the former act was expressly repealed by the latter.
We cannot suppose the legislature intended so great a mischief, unless they had so expressly declared. If, therefore, the premises assumed, were correct, the conclusion attempted to be drawn therefrom, cannot be maintained; and, consequently, the first assignment of error must be overruled.
*326 The second assignment of errar tías very feebly, relied upon in argument, and is sufficiently refuted by an examination of the submission itself.
The third assignment of error seems to be founded •upon a mistake, in supposing there was but one James Galloway a party to the submission ; whereas a close attention to the record, proves there were two, to wit — ⅛-James Galloway, an adult, whose claim under his certificate for pre-emption of 1000 acres, is submitted ; and James Galloway, the infant co-heir and devisee with John, of William Galloway, deceased, whose claim, derived under the entry of 800 acres, made in the name ef their ancestor, is also submitted.
But had this not been the case, the uncertainty in the award, as to the pre-emption of 1000 acres, relied on in the argument, could be no cause for setting aside the award, so far as it relates to the claim of William Galloway, of 800 acres ; or the judgment of the court rendered on that part of the award alone. They are two distinct subjects. It has been often held that an award good in part, and bad in part, may be supported as to the part which is good. The doctrine applies with peculiar force to those cases where the several parts of the award relate tó several subjects ; and many cases have carried the doctrine much farther.
That the part of the award relating to the claim of James and John Galloway, deceased, (which is the only part thereof now before the court) is sufficiently certain, will be shewn in the consideration of the fourth assignment of errors.
The objection contained in that assignment, is, that the arbitrators did not fix the boundaries of the land directed by this part of the award to be conveyed to Webb,, but left the boundaries to be settled by the surveyor.
This objection is capable of several answers, deemed satisfactory. First — The land directed in the award to be conveyed by John and James Galloway, infants, &c. is sufficiently ascertained and described in the award itself, without any survey being made.
The award directs them to convey, by their guardian, “ All their right, title, and interest, to what land the said William 0. WebbV survey covers of the entry and survey of William Galloway, deceased;” If a deed, in other respects regular, had been executed, -describing the *327 land conveyed in the very words of the award, it would have contained sufficient description ; and would forever have extinguished their title to any part of the interference between the two claims. If the arbitrators had ascertained the precise boundary, and quantity of interference, and had directed a deed to be executed agreeably thereto, it could, when executed, have done, no more.
Secondly — An award which is certain to a common intent, should be adjudged good ; otherwise few awards would be permitted to stand. For however well this domestic tribunal of the parties’ own choice, may be calculated to administer substantial justice between them, the judges thereof cannot be presumed to be generally conversant with technical forms. And we think this part of the award certain to a common intent, as tó what land was to be conveyed.
It has been urged that the arbitrators should have ascertained the precise boundary of the land to be conveyed ; and that otherwise the boundary may still be a sub*-ject of dispute. But how, it may be asked ? By questioning the identity of the lines of the original survey ?
Suppose the arbitrators had gone on the ground, or had, previous to making up their award, sent the surveyor to lay down, with lines and figures, the boundaries or lines of the land to be conveyed ; might not the identity of these lines, so laid down, be afterwards made a. question ? Surely they might. And so too, after an. interlocutory decree, and then a final decree made on a report of the surveyor in a chancery cause, if the parties were sufficiently perverse, a dispute might be made, as to the identity of the lines of the survey reported, contained in the final decree. And this dispute can only be settled by calling on the surveyor, or others, who were present, or by tracing the lines. -Yet, would any man contend the decree was not certain, to every reasonable intent ? So here, the arbitrators direct the whole of the original survey of the one party, within the boundaries of the original survey of the other, to be conveyed to that other. Nothing was necessary, but to trace the lines of the original survey.
Before a party should be permitted to excuse himself from the performance of an award, on the ground of uncertainty, or that the subject was still left open to li-* *igatio% thettocertainty should appear, not only to bo *328 stich as the party might raise a dispute about, but ⅞ should be such as he might fairly and honestly dispute about; because he could not reasonably know what was his duty.
A third answer to this objection, is, that the arbitra*-tors have not left the boundary of the land to be conveyed, to be ascertained by the surveyor, as is in the assignment of error supposed, but only the quantity : a thing wholly immaterial to be ascertained in any way. It clearly appears that the lines of the original survey including the interference, were intended to be the boundary of land to be conveyed ; the award having directed the whole of the one survey covered by the other, (which would necessarily furnish a complete boundary sill around the tract) to be conveyed.
But whether the quantity or boundary of the land to be conveyed, had been directed to be ascertained by the surveyor, we should, in this case, have held the award, as to the present parties, good. Because it would be but doing a ministerial act, by a ministerial officer, acting under the direction of the award, or the judgment of the court thereon. In the one case, he would only have to take the bearings and distances of so much of the lines of the original surveys, as embraced the interference ; and in the other, he would have to calculate the area within those lines ; for in both cases, the award clearly points out those lines as the criterion by which he is to be governed.
Many awards have been holden good, which directed one party to pay the costs, without ascertaining the amount of the costs ; but leaving them to be taxed or calculated by the ministerial officer of the court, the clerk. And yet the clerk might tax the costs erroneously, and his erroneous taxation might be corrected by the court. The case before us, does not appear to be a stronger one.
It has been urged that this award is only interlocutory, not final, as it should be, and therefore reversible : and it has been likened to an interlocutory decree. But we-cannot discover the similarity between them. After an interlocutory decree pronounced by the court, it may, on a sufficient dase made out, be set aside by the court, to permit the party to amend his proceedings, or to take new evidence ; and is completely within the power of *329 the court : and therefore it is hot final; or in other words, conclusive, as to the matter of right. Such would hot be the case in this award, after the court had ren-déred judgment on it. It could only be opeited by those means whereby a final decree could be opened. The award must be considered, iti this case, as having finally decided the controversy. . .. .
, The matter in controversy, was, whether William C. Webb’s, or the two minor Galloways’ right to the land embraced within the interference between their claims; was the best. That controversy is certainly and finally-determined, by the award having directed that they should convey to him the whole of the interference between the surveys.
As to th^ fifth assignment, we are of opinion that the direction to the infants to convey by their guardian, is not fatal. The substantial part of the decision, is, that John and james Galloway, (the infants) shall convey. The direction that they shall clb it by guardián, is bat ⅜ direction aS to the form, and not material.
If the act of 1797, had expressly directed that upon a submission by guardians, on behalf of their wards, the guardians, on a decision against them, shall convey for them ; it cannot be. doubted, that if the conveyance were not made by the guardians^ during their guardianship-, or the minority of theii" wards, the infants might, after attaining full age, be compelled to make the conveyance } that being the substahee of the thing awárded.
The act; it is true, does not give such direction ; and therefore it is contended, that the award, having so directed, must be fatally erroneous. The conclusion does not follow : for if, in the Case before put, the direction that they should convey by their guardians, would be dispensed with, as an immaterial formality ; no reason can be discerned, why, in this case, it should not be deemed an immaterial formality likewise. The substance of the award here; as well as in the case supposed, is, that the parties shall convey.
If the guardian had conveyed, it could not, by any possibility, have prejudiced their wards. It could only operate as a conveyance during their minority : during which time, the guardians might have bound the estate by lease, and delivery of possession. But if the guardians had made a lease to endure beyond the minority of *330 their wards, it would have been good during that period, although voidable by them, when they attained full age. And such must have been the nature of the conveyance here, if it had oeen executed. In this case, the guardians might have surrendered the possession of the land under the award ; and it is conceived it was their1 duty to do so.
Whether the guardians have either conveyed or surrendered possession, we cannot tell from the record ; nor is it material. The infants have a right, upon their coming of age, to shew cause, if any they can, against the decree rendered on the award, either by a proper case made out in a bill exhibited by them to set it aside, or in any proceeding against them, to enforce it.
Upon the whole, the award, as to the matter of right, appears to us as certain and final as is required by the laws of 1795, and 1797, under which it was made; and that the matter of this assignment must be considered as but a matter of form ; which, under the act of 1795, ought to be disregarded. From this view of the subject, it will not be necessary finally to determine whether the guardians should convey the legal title completely, or not.
The sixth assignment of error, it is conceived, is sufficiently answered by the observations on the previous /assignments.
As to the seventh, and last error assigned, we are of opinion, that if we could judicially know that the persons named as arbitrators, were the judges ot the court, of the same names ; it would not be considered as error. The act of assembly gave the parties the right of choosing “ any person or persons,” as their arbitrators ; and we cannot restrain their exercise of that right of choice. The choice is the act of the parties — not of the court.
Judgment affirmed.

 a£1s of 1796-7,?. 145, 1 Brad* 5IO«

⅜) A£ts of T?95>ch- 9> P-47‘

^ A&s of 1 kf, 1798, ch. 5’ P- 57> * Brad’57'

*) a Inlfe 6ll> 6l*‘

Gwil. E4, val, 39;. (¿) old.Ed.

p' (c) Ch. 47-